# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SHAWNA ALLEN,<br><br>   Plaintiff,<br><br> v.<br><br>SHUTTERFLY, INC., et al.,<br><br>   Defendants. | Case No. 20-cv-02448-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; TERMINATING RULE 12(B)(6) MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>[Re: ECF 23] |

Plaintiff Shawna Allen, brings this consumer fraud class action against Shutterfly, Inc. ("Shutterfly"), Lifetouch, Inc. and Lifetouch National School Studios, Inc. (collectively, "Lifetouch") arising from the purchase of school portraits. Before the Court is Shutterfly's Motion to Compel Individual Arbitration.[1] Mot. to Compel, ECF 23.

The Court heard oral arguments on August 14, 2020. For the reasons stated below, the Court GRANTS Shutterfly's Motion to Compel. Shutterfly's Rule 12(b)(6) Motion to Dismiss is now moot and is therefore TERMINATED WITHOUT PREJUDICE.

## I.  BACKGROUND

This putative class action lawsuit arises out of Defendants' alleged "policy and practice of illegally sending unordered portraits and other products to Plaintiff and class members and requesting payment for these unsolicited goods" in violation of California law. Compl. ¶¶ 3-5, ECF 1-1. Plaintiff alleges that Defendants are in the business of selling school photos and self-identify as "the national leader in school portraits" and the nation's largest producer of photos. *Id*. ¶¶ 1, 18,

---

[1] Defendants Lifetouch, Inc. and Lifetouch National School Studios, Inc. joined in this Motion "only to the extent that the Court first determines that personal jurisdiction exists over the claims against them." Notice of Motion at 2, ECF 23. The Court has granted Lifetouch's Motion to Dismiss for Lack of Personal Jurisdiction with leave to amend at ECF 45.

19. Defendants contract with school districts to provide portrait taking services and to sell portrait products to the students' parents and guardians. *Id.* ¶¶ 1, 2, 55. The portrait products are sold under a "Family Approval" model where "students' portraits and/or products printed with their portraits" are packaged and sent home with the students. *Id.* ¶ 2. The package contains written materials about how to purchase portraits and return unwanted portraits to the school. *Id.* ¶¶ 35, 36, 37-39, 42-44. Shutterfly also sends digital written material about the packages. *Id.* ¶¶ 31, 33.

Plaintiff is a Kansas resident who purchased portraits from Shutterfly under its "Family Approval" model. Compl. ¶¶ 7-8. For the last three spring seasons, Shutterfly offered portraits of Plaintiff's children for sale and sent Plaintiff "statements requesting payment" for these portraits using the "Family Approval" model. *Id.* ¶ 4. Plaintiff alleges she purchased portrait packages in spring 2017 and spring 2018 using cash or check, but not on Shutterfly's Lifetouch website. *Id.* ¶¶ 45-46. Shutterfly asserts Plaintiff made additional purchases online "through Lifetouch's website using a PayPal account with Plaintiff's home address during the fall of 2016, 2017, 2018, and 2019." Mot. Compel at 8; *see also,* Declaration of John Grant ("Grant Decl.") ¶¶ 13-18, ECF 23-1. Plaintiff does not dispute these fall purchases and confirms that she made online purchases in August 2018, September 2018, and October 2019. *See generally*, Plaintiff's Corrected Opposition to Defendants' Motion to Compel Arbitration ("Opp'n"), ECF 30; Declaration of Shawna Allen ("Allen Decl.") ¶¶ 2-5, 7.

Shutterfly, Inc. acquired Lifetouch, Inc. in April 2018. Grant Decl. ¶ 7. At the time, Lifetouch National School Studios, Inc. was a wholly-owned subsidiary of Lifetouch, Inc. *Id.* In late 2019, Defendants underwent corporate restructuring. Mot. Compel at 3-4. Shutterfly, Inc. converted into a limited liability company and renamed as Shutterfly, LLC. Grant Decl. ¶ 4. Lifetouch, Inc. converted into a limited liability company and then merged with Shutterfly, LLC. *Id.* ¶ 5. Lifetouch National School Studios, Inc. converted into a limited liability company and renamed to Shutterfly Lifetouch, LLC. *Id.* ¶ 6. Plaintiff does not dispute the described restructuring. *See generally*, Opp'n.

Plaintiff filed suit against Defendants in Santa Clara County Superior Court on February 14, 2020. *See* Summons Exh. A, ECF 1. Plaintiff brings the following causes of action under California

law: (1) Solicitation of Payment for Unordered Goods in violation of California Civil Code § 1716; (2) Violation of California Civil Code § 1584.5; (3) Violation of the California Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*; (4) Violation of the California Unfair Competition Law, Business and Professional Code § 17200 *et seq.*; and (5) Unjust Enrichment. *See generally*, Compl. Plaintiff attaches a copy of Lifetouch's 2018 TOS and incorporates those terms in her Complaint. *Id.* ¶¶ 13-15. On April 10, 2020, Shutterfly removed the case to the United States District Court for the Northern District of California. *See* Notice of Removal, ECF 1.

Shutterfly now seeks to compel individual arbitration pursuant to the arbitration agreement and class action waiver included in Lifetouch's 2018 Terms of Service ("2018 TOS"). Mot. Compel at 7.

### A. Lifetouch's 2018 Terms of Service

After Shutterfly's acquisition of Lifetouch, Inc. in April 2018, Lifetouch, Inc. updated its Terms of Service to include, *inter alia*, an arbitration clause and a class action waiver. Grant Decl. ¶ 7. Lifetouch's operative Terms of Service became effective in July 2018. Mot. Compel at 6, Grant Decl. ¶ 11. The 2018 TOS served "to align the combined companies' policies and practices" after Lifetouch, Inc. joined the Shutterfly family of brands. 2018 TOS at 1, ECF 23-3. The 2018 TOS includes a reservation of rights and details about consent to the terms:

> By visiting any of our Sites and Apps, you are signifying your assent to these Terms and our Privacy Policy, which is incorporated herein by reference. Any products ordered or services used through any of our Sites and Apps are also governed by these Terms. We may revise these Terms from time to time by posting a revised version. YOUR CONTINUED USE OF ANY OF THE SITES AND APPS AFTER WE POST ANY CHANGES WILL CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES. IN ADDITION, BY ORDERING OUR PRODUCTS OR USING OUR SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ AND REVIEWED THESE TERMS IN THEIR ENTIRETY, YOU AGREE TO THESE TERMS AND THE PRIVACY POLICY AND THESE TERMS CONSTITUTE BINDING AND ENFORCEABLE OBLIGATIONS ON YOU.

2018 TOS at 1. Below this reservation of rights, the 2018 TOS provides:

> NOTE: THIS TERMS OF SERVICE CONTAINS AN ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE "ARBITRATION" SECTION BELOW THAT AFFECTS YOUR RIGHTS UNDER THIS TERMS OF SERVICE AND WITH

3

                    RESPECT TO ANY DISPUTE BETWEEN YOU AND US OR OUR AFFILIATES

2018 TOS at 1. Section 16 contains the "Arbitration Agreement," which provides:

> If you are a Lifetouch customer in the United States (including its possessions and territories), you and Lifetouch agree that any dispute, claim or controversy arising out of or relating in any way to the Lifetouch service, these Terms of Service and this Arbitration Agreement, shall be determined by binding arbitration or in small claims court.

2018 TOS at 9-11, § 16 ("Arbitration Agreement" or "Agreement").

Section 16 further provides that the arbitration "will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA')." 2018 TOS § 16. Moreover, "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, interpretation and enforceability of this arbitration agreement." *Id.* The 2018 TOS is referenced both on the Lifetouch online website and in printed order forms. Grant Decl. ¶¶ 19-21.

For online purchases made since July 2018, Lifetouch customers are provided with a link to the "Terms and Conditions" above the "Submit Payment" button at checkout. Grant Decl. ¶ 20. As shown below, this page provides that "by clicking 'Submit Payment' [the purchaser] agree[s] to the Privacy Statement and Terms of Service[.]" *Id.*

**Helpful Order Shipping Information**
Shipping to your school/organization: Items are usually sent home with your student. Group or class pictures may be delivered separately from portraits.
Shipping to your address: These items may be delivered separately, particularly gift products (like magnets or mugs).
Delivery of digital item(s): You'll get a separate email to download your item(s). For orders placed before Picture Day, it may take 2-3 weeks after Picture Day for the item to be ready.

By clicking "Submit Payment" I agree to the Privacy Statement and Terms and Conditions I also confirm that I am the legal parent/guardian of the student(s) in this order or I have authorization from the legal parent/guardian to place this order.

[Submit Payment]

*Id.* In addition, a link to the 2018 TOS can be found on the bottom of each Lifetouch webpage, as shown below.



*Id.* ¶ 19.

Beginning spring 2019, paper order forms found within the "Family Approval Program" package state that "by completing and submitting this order form, you are agreeing to all of Lifetouch's terms and conditions at [URL to access webpage containing TOS]":

Grant Decl. ¶ 21, Paper Order Form at 3, ECF 23-4.

**B.** **Lifetouch's 2015 Terms of Service**

Before July 2018, Lifetouch last updated its Terms of Service in August 2015 ("2015 TOS"). Grant Decl. ¶ 8. The first line in the 2015 TOS is titled "Website Terms and Conditions of Use" followed by the following statement:

> PLEASE READ THESE TERMS AND CONDITIONS OF USE

> (THE "TERMS") CAREFULLY, AS THEY MAY HAVE CHANGED SINCE YOUR LAST VISIT TO THIS WEBSITE. BY USING THIS WEBSITE, YOU AGREE AND ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THESE TERMS OF USE.

2015 TOS at 2[2], ECF 23-2.  Below this statement, Lifetouch includes a reservation of rights provision:

> We reserve the right to update or modify these Terms at any time without prior notice. Your use of the Website following any such change constitutes your agreement to follow and be bound by the Terms as changed. For this reason, we encourage you to review these Terms whenever you use this Website.

*Id.* at 2.  Elsewhere in the 2015 TOS and under "General Provisions" Lifetouch states "[n]o amendment to these Terms will be valid unless made in writing and signed by you and us." *Id* at 10.  The 2015 TOS did not include an arbitration clause.  *See* Mot. Compel at 6; 2015 TOS.

## II. LEGAL STANDARD

The parties agree that the FAA applies. *See* Mot. to Compel at 4-6; Opp'n at 1-2 (arguing under FAA).  The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted).  The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).  However, certain issues are presumptively reserved for the court.  These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding

---

[2] No page numbers are included in Lifetouch's 2015 TOS at ECF 23-2.  In this Order, the Court cites to the page numbers assigned to the document by ECF.

1  contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)
2  (citation omitted).
3        That said, parties may delegate the adjudication of gateway issues to the arbitrator if they
4  "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862
5  F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within
6  the province of judicial review, courts "apply a more rigorous standard in determining whether the
7  parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987-88. "[C]lear
8  and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of
9  conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted)
10 (alteration in original).
11       If there is no clear and unmistakable delegation, a district court engages in a limited two-
12 part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration
13 agreement is valid, and second, it determines whether the agreement encompasses the claims at
14 issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985).
15 When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to
16 be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999)
17 (interpreting language "arising in connection with" in arbitration clause to "reach[] every dispute
18 between the parties having a significant relationship to the contract and all disputes having their
19 origin or genesis in the contract").

20 **III.  DISCUSSION**

21       Shutterfly seeks to compel individual arbitration and argues that (1) a valid arbitration
22 agreement exists that encompasses the issues in dispute and (2) the scope and interpretation of the
23 Arbitration Agreements are delegated to the arbitrator. Mot. to Compel at 1. Plaintiff responds with
24 four arguments as to why she should not be compelled to arbitrate her claims: (1) the 2018 TOS
25 does not apply to Plaintiff's claims because Defendants "conceded" that point in their Rule 12(b)(6)
26 Motion to Dismiss briefing, (2) Plaintiff did not assent to the Arbitration Agreement, (3) the 2018
27 TOS does not apply to "school accounts," and (4) the Arbitration Agreement does not apply to
28 Plaintiff's purchases prior to July 2018. *See generally*, Opp'n.

7

### A. Delegation of Arbitrability

The Court must first determine whether the parties agreed to arbitrate the gateway issues of arbitrability. The Arbitration Agreement here contains a delegation clause stating, "[a]ll issues are for the arbitrator to decide, including issues related to the scope, interpretation, and enforceability of this arbitration agreement." 2018 TOS § 16. The Arbitration agreement also incorporates the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association ("AAA"). *Id.* In the Ninth Circuit, it is well-settled that incorporation of arbitration rules (such as AAA), "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan. 20, 2016); *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019).

Plaintiff offers no arguments in opposition to delegation. Plaintiff explains that she "understands that if the Court grants Defendants' Motion to Compel Arbitration, the Court may delegate Plaintiff's fraud, unconscionability, and other non-formation and validity arguments to the arbitrator." Opp'n at 10 n. 2. Plaintiff also "reserves the right to make such arguments to an arbitrator." *Id.*

Accordingly, there is no dispute that the 2018 TOS delegated the gateway questions of arbitrability to the arbitrator.

### B. Shutterfly's Arguments in its Motion to Dismiss

Plaintiff contends that because Defendants "acknowledge" that this case is outside of the scope of the 2018 TOS, Plaintiff's claims are not subject to the Arbitration Agreement. Plaintiff's sole basis for this argument is Shutterfly's arguments in its Rule 12(b)(6) Motion to Dismiss (ECF 24), which was filed concurrently with the present Motion. Opp'n at 2 (citing ECF 24 at 5).

There, Shutterfly challenged Plaintiff's claims under California law, arguing that the "choice of law" provision in the 2018 TOS does not apply to Plaintiff's claims. Specifically, Shutterfly argued:

> As an initial matter, Plaintiff is wrong when she alleges the Terms of Service that govern her transactions "contain a choice of law

8

provision dictating that California law will apply to all consumers nationwide". Compl. ¶ 14. That choice-of-law provision is expressly limited to the interpretation of the Terms of Service themselves: "*These Terms* are governed by and construed in accordance with the laws of the State of California, United States of America, without regards to its conflict of law provisions." *Id.* Ex. A ¶ 14 (emphasis added). ***This unambiguous language makes it clear that the agreement does not govern substantive claims brought by consumers against Defendants regarding their products and services, including the ones Plaintiff attempts to assert here***.

ECF 24 at 5 (emphasis added).

Plaintiff misrepresents Shutterfly's Rule 12(b)(6) Motion. It is clear from the language and context of the cited paragraph that Shutterfly was referring to the "choice of law" provision as not being applicable to Plaintiff's claims – and not the entire 2018 TOS. Plaintiff's "gotcha" argument is further belied by the cited paragraph itself which starts with "Plaintiff is wrong when she alleges ***the Terms of Service that govern her transactions***[,]" making it clear that Shutterfly asserts that the 2018 TOS applies to Plaintiff's purchases, but the "choice of law" provision does not.[3]

Thus, the Court finds that Shutterfly did not make any concessions regarding the applicability of the 2018 TOS to Plaintiff's claims.

### C. Plaintiff's Assent to the Arbitration Agreement

Next, Plaintiff argues that she did not assent to the arbitration agreement because (1) the Agreement's design is inconspicuous and (2) the Agreement is not between Plaintiff and "any proper defendant." Opp'n at 3-8

#### 1. The Design of 2018 TOS in Lifetouch's Website

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Even in the age of the internet, "mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016) (citation and alterations omitted).

Most internet contracts come in one of two forms: (1) "'clickwrap' (or 'click-through')

---

[3] The Court does not make any findings or observations on the merits of Shutterfly's arguments regarding the "choice of law" provision.

1  agreements, in which website users are required to click on an 'I agree' box after being presented
2  with a list of terms and conditions of use" and (2) "'browsewrap' agreements, where a website's
3  terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the
4  screen." *Nguyen*, 763 F.3d at 1175-76.  A browsewrap contract is valid if "the user has actual or
5  constructive knowledge of a website's terms and conditions.'" *Id.* at 1176 (citation omitted). The
6  Ninth Circuit is "more willing to find the requisite notice for constructive assent where the
7  browsewrap agreement resembles a clickwrap agreement." *Id.*  Courts evaluate "the
8  conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the
9  terms of use, and the website's general design" in determining "whether a reasonably prudent user
10 would have inquiry notice of a browsewrap agreement." *Id.*

11     Plaintiff asserts, and Shutterfly does not dispute, that Lifetouch 2018 TOS was a "hybrid"
12 (also known as "sign up") internet contract "in which a user signs up to use an internet product or
13 service, and the signup screen states that acceptance of a separate agreement is required before the
14 user can access the service." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal.
15 2019).  As shown below, when Lifetouch customers "Submit Payment" for their purchase on
16 Lifetouch website, they are presented with a statement that "by clicking 'Submit Payment' I agree
17 to the Privacy Statement and Terms of Service" with a blue hyperlink to those Terms. Grant Decl.
18 ¶ 20.



*Id.* Plaintiff contends that the 2018 TOS is "inconspicuous by design." Opp'n at 3. Plaintiff
contends that the "use of color, borders, bold typeface, and shading" makes the 2018 TOS

10

inconspicuous, and is insufficient to put a reasonable user on notice. *Id.* at 4.

For support, Plaintiff relies on the Ninth Circuit decision in *Nguyen*, where the court assessed a purely "browsewrap" agreement where the defendant's "Terms of Use" hyperlink was located at the bottom left-hand corner of every page on the Barnes & Noble website and had a "close proximity to the buttons a user must click on to complete an online purchase." 763 F.3d at 1177. Under those circumstances and "in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers," the Ninth Circuit held that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website ***but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent***, even close proximity of the hyperlink to relevant buttons users must click on—***without more***—is insufficient to give rise to constructive notice." *Id.* at 1178-79 (emphasis added). Here, in contrast to the circumstances in *Nguyen,* Lifetouch users are required to "affirmatively acknowledge" the 2018 TOS before proceeding with their purchase. *Id.* at 1176.

Courts in this Circuit routinely uphold the validity of internet contracts like Lifetouch's 2018 TOS. The Ninth Circuit recently found "sufficient notice to a reasonably prudent internet user" of TurboTax's Terms of Use (which included an arbitration clause) where the user was "required to click a 'Sign In' button, directly under which the following language appeared: 'By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.'" *Dohrmann v. Intuit, Inc.*, No. 20-15466, 2020 WL 4601254, at *2 (9th Cir. Aug. 11, 2020). There, the Ninth Circuit found acceptable "light blue hyperlinks which, if clicked, directed the user to a new webpage," which directed the user to the Terms of Service agreement that contained the arbitration clause. *Id.*

In another recent decision, the Ninth Circuit found plaintiff "validly assented to Ticketmaster's Terms of Use, […] each time he clicked the 'Place Order' button when placing an order for tickets, where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use,' where in both contexts, 'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms." *Lee v. Ticketmaster L.L.C.*, No. 19-15673, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020). And in *Peter v. DoorDash, Inc.*, Judge

11

1   Tigar found sufficient inquiry notice of DoorDash's Terms and Conditions where directly below the
2   "Sign Up" button, a statement read: "By tapping Sign Up, […] you agree to our Terms and
3   Conditions and Privacy Statement" and the words "Terms and Conditions" appeared in blue text
4   and were hyperlinked to the DoorDash's Terms and Conditions in effect at the time.  445 F. Supp.
5   3d 580, 587 (N.D. Cal. 2020).

6   Lifetouch's website design presents nearly identical circumstances to the cases noted above,
7   where "Terms and Conditions" appear in blue text, are hyperlinked, and placed directly above the
8   "Submit Payment" and consumers are presented with a statement that reads: "by clicking 'Submit
9   Payment' I agree to the Privacy Statement and Terms of Service[.]"  Grant Decl. ¶ 20.  Thus, in light
10  of clear authority in this Circuit, Plaintiff validly assented to the 2018 TOS, including the arbitration
11  provision, each time she clicked the "Submit Payment" button when she purchased school portrait
12  products on Lifetouch website.

13  While citing to *Nguyen*, which clearly addresses an internet contract, Plaintiff also takes
14  issue with Lifetouch's Family Approval Program paper order forms, arguing that the instructions to
15  access the Terms and Conditions were at the bottom of a single page within a multiple page packet
16  and the terms themselves are not provided on the paper documents.  Opp'n at 6-7.  Plaintiff is correct
17  in noting that the instruction on how to access the 2018 TOS are in "small non-colored font without
18  any shading."  *See* Opp'n at 6 (citing ECF 27-3).  But because Plaintiff had constructive notice of
19  the 2018 TOS when she made her undisputed purchases on Lifetouch website, it is irrelevant
20  whether she had ***additional*** constructive notice via the paper order form.  *See* Allen Decl. ¶¶ 2-6
21  (discussing her August 2018, September 2018, or October 2019 online purchases of school
22  portraits).[4]

23  Finally, Plaintiff argues that discovery regarding the percentage of users that clicked the
24  Terms and Conditions is necessary to determine whether Lifetouch 2018 TOS were conspicuous.
25  Opp'n at 7.  Plaintiff's requested discovery, however, would provide no new information that is
26  necessary for the Court to determine the issue of constructive notice.  Plaintiff has presented no

---

[4] The Court notes that Plaintiff has not argued that her purchases made via the paper order form and paid for by cash or check should be analyzed in isolation from her online purchases.

1    authority where discovery was allowed regarding percentage of users that clicked on link, in order
2    to resolve a constructive notice question. In *Doe v. Xytex Corp.*, which Plaintiff cites, the court
3    granted leave to conduct limited discovery only because the record was inadequate as to how
4    defendant's website appeared during the relevant timeframe. No. C 16-02935 WHA, 2016 WL
5    3902577, at *4 (N.D. Cal. July 19, 2016). The Lifetouch 2018 TOS and the undisputed appearance
6    of Lifetouch's website speak for themselves and under clear authority in this Circuit, Plaintiff had
7    sufficient constructive notice. No arbitration-related discovery is warranted.

                                                    ***

9    In conclusion, The Court finds that when Plaintiff purchased school portraits on Lifetouch
10   website, she assented to the 2018 TOS.

### 2. Parties to the Arbitration Agreement

12   Plaintiff also argues that "[t]he arbitration agreement does not indicate with whom the
13   consumer is agreeing" and does not mention the post corporate restructuring entities Shutterfly LLC
14   and Shutterfly Lifetouch LLC. Opp'n at 8. Shutterfly responds that all Defendants have standing
15   to enforce the Arbitration Agreement because (1) the terms of the Agreement do not limit the
16   arbitratable disputes to the signatories of the 2018 TOS and (2) the arbitration agreement is
17   enforceable as to all Defendants under the doctrine of equitable estoppel. Reply at 3-4, ECF 37.

18   The Court agrees with Shutterfly on both fronts. First, the Arbitration Agreement is not
19   limited to the parties, but encompasses all disputes arising from Lifetouch's services. Specifically,
20   the Agreement provides: "you and Lifetouch agree that any dispute, claim or controversy ***arising
21   out of or relating in any way to the Lifetouch service***, these Terms of Service and this Arbitration
22   Agreement, shall be determined by binding arbitration or in small claims court." 2018 TOS § 16
23   (emphasis added). And the first sentence of the 2018 TOS informs the consumers that "[o]n April
24   2, 2018, Lifetouch Inc. joined the Shutterfly family of brands" and "[t]he following Terms of Service
25   were updated to align the combined companies' policies and practices where applicable." 2018
26   TOS at 1. Shutterfly was clearly identified as Lifetouch's parent company and the Arbitration
27   clause, by its plain language, encompasses all disputes arising from Lifetouch services (here,
28   purchase of school portraits under the Family Approval program). These facts distinguish this case

1  from Plaintiff's cited authority where the arbitration clause stated that "[e]ither you or we may
2  choose to have any dispute *between you and us* decided by arbitration." *Kramer v. Toyota Motor*
3  *Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (emphasis added).
4        To the extent Plaintiff argues the new Shutterfly (Shutterfly LLC) lacks standing to enforce
5  the Arbitration Agreement, Plaintiff has provided no authority and articulated no arguments as to
6  why a restructured successor is barred from enforcing an arbitration agreement entered into by its
7  predecessor.[5]
8        Second, in the Ninth Circuit a signatory to a contract may be required to arbitrate a dispute
9  with a non-signatory where there is a "close relationship between the entities involved, as well as
10 the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract
11 and ... the claims [are] intertwined with the underlying contractual obligations." *Munid v. Union*
12 *Sec. Life Inc. Co.*, 555 F.3d 1042, 1046 (9th Cir.2009). Along those lines, "[w]hen the charges
13 against a parent company and its subsidiary are based on the same facts and are inherently
14 inseparable, a court may refer claims against the parent to arbitration even though the parent is not
15 formally a party to the arbitration agreement. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C
16 13-3349 SI, 2014 WL 1395733, at *4 (N.D. Cal. Apr. 10, 2014) (citation omitted).
17       Plaintiff charges Defendants collectively with the same conduct regarding the unordered
18 school portraits. *See generally*, Compl. The Complaint does not distinguish between Defendants'
19 acts and alleges that "each of the Defendants […] gave consent to, ratified, adopted, approved,
20 controlled, aided and abetted, and/or otherwise authorized the acts alleged herein to the remaining
21 Defendants." *Id.* ¶ 11. Plaintiff further alleges that Defendants are "agent, employee, representing
22 partner, officer, director, subsidiary, affiliate, parent corporation, successor and/or predecessor in
23 interest and/or joint venture of the remaining Defendants." *Id.*
24       But more importantly, Plaintiff refers to the 2018 TOS as "Defendants' Terms of Service"
25 and incorporates those Terms in her Complaint. *Id.* ¶ 13. Specifically, she alleges that the "choice

---

[5] The same is true as to the new Lifetouch entity (Shutterfly Lifetouch LLC). But the Court does not reach that issue because Shutterfly alone brings this Motion due to the Court's lack of jurisdiction over Lifetouch, Inc. and Lifetouch National School Studios, Inc. *See* Notice of Motion at 2; ECF 45.

14

of law" provision contained in the 2018 TOS is binding on all Defendants – including Shutterfly. *Id.* ¶¶ 13-14. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128 (9th Cir. 2013) (*Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.2006)). This is exactly what Plaintiff suggests to do here – hold Shutterfly to the "choice of law" provision in the 2018 TOS, while simultaneously preventing Shutterfly from enforcing the arbitration clause of the same agreement. Equitable estoppel does not allow Plaintiff to do so.

In sum, the Court finds that Shutterfly may compel Plaintiff to arbitration pursuant to the 2018 TOS.

### D. School Accounts

Next, Plaintiff argues that the 2018 TOS does not apply to "school accounts" and that "it is unclear whether Plaintiff's account is even subject to these Terms of Service." Opp'n at 8.

The 2018 TOS provides:

> **Note to Lifetouch school accounts**: Separate terms of service, not these Terms, apply to products and services (including websites, applications and online services) that are designed for the use and benefit of the schools and school districts Lifetouch provides service to for their administrative and educational purposes and which are used by or at the direction of teachers or other school or district employees (a "School Service"). Please refer to the Terms of Service associated with those School Services or contact us through your Lifetouch school account representative for further information.

2018 TOS at 1. Plaintiff argues "[w]hether these photos were 'designed for the use and benefit of the schools' is a question of fact." Opp'n at 9. Plaintiff misrepresents the provision and partially quotes its language, ignoring the remainder of the sentence that clearly limits the carved out services to those "for [the schools'] administrative and educational purposes and which are used by or at the direction of teachers or other school or district employees." 2018 TOS at 1. It is hard to imagine how portraits of students purchased by their parents or guardians are used for the "administrative and educational" use of teachers or other school employees.

Thus, Plaintiff's purchases are not excluded from the 2018 TOS based on the carve-out provided for school accounts.

### E. Plaintiff's Purchases Prior to July 2018

Finally, Plaintiff argues that her purchases made before July 2018 are not subject to arbitration, because Lifetouch's Terms of Service that was in effect before July 2018 did not include an arbitration clause. Opp'n at 9 (citing 23-2). Plaintiff and Shutterfly present a dispute as to whether the terms of the 2015 TOS allow for retroactive application of the arbitration clause. *See* Mot. to Compel at 6-7 (noting the reservation of right to update or modify the 2015 Terms of Service); Opp'n at 9 (noting that the 2015 TOS did not allow any amendments unless made in writing and signed by both parties).

The parties' dispute is a question of scope, which the parties have delegated to the arbitrator. *See Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-CV-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) ("When [plaintiff] maintains she did not consent to arbitrate claims that had accrued before the Arbitration Agreement was signed, she is arguing about the reach or scope of the Agreement, not whether she agreed to arbitrate.") Thus, the Court finds the question of retroactive application of the Arbitration Agreement to Plaintiff's purchases prior to July 2018 is in the arbitrator's purview.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Shutterfly's Motion to Compel Arbitration at ECF 23. Shutterfly's Rule 12(b)(6) Motion to Dismiss is TERMINATED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: September 14, 2020

_____
BETH LABSON FREEMAN
United States District Judge